# Enslen *v.* Thornton, *et al.*

### Bill to Quiet Title.

(Decided May 20, 1913.   62 South. 525.)

1. *Records; Deed; Effect.*—Where a deed is filed in the office of
the judge of probate, it becomes operative as a record from the date
of its filing under section 3369, Code 1907, and any mistake in the
probate office in transcribing it will not deprive it of the operation
thus given it.

2. *Deeds; Failure to Record; Effect.*—The failure of a grantee to
record his deed does not affect his right except as against those
claiming under his grantor while his grantor had the record title.

3. *Vendor and Purchaser; Bona Fide Purchaser; Notice.*—Actual
possession of land operates as notice of the title of the party in pos-
session, legal or equitable.

APPEAL from Jefferson Chancery Court.
Heard before Hon. A. H. BENNERS.

[Enslen v. Thornton, et al.]

Bill by Isham J. Dorsey, as executor, against Annie L. Thornton and others to quiet title to certain land. From the decree rendered for complainant Fred E. Enslen, one of the respondents appeal. Affirmed.

CLARK WILLIAMS, for appellant. No brief reached the Reporter.

BARNES & DENSON, for appellee. The bill was not multifarious.—*Reddick v. Long*, 124 Ala. 260. The issue presented required the court to decree whether defendant or any one of them had any right, title or interest in the land, and of course, the decree must determine the extent and character of the action.—*Ward v. Janney*, 104 Ala. 122; *Cheney v. Nathan*, 110 Ala. 254; *Whittaker v. VanHoose*, 157 Ala. 287. Under the evidence, the court rendered a proper decree. The mistake in the record of the deed could not affect the deed as notice under the provisions of section 3369, Code 1907.—*Chapman v. Johnston*, 142 Ala. 633; *Truss v. Harvey*, 120 Ala. 636; *Heflin v. Slay*, 78 Ala. 180. The issue presented by Enslen under the mortgage was not an issue of contested or scrambling possession.—*Brand v. U. S. C. Co.*, 128 Ala. 579; *Ward L. Co. v. Williams*, 157 Ala. 73.

DE GRAFFENRIED, J.—This bill was filed by Isham J. Dorsey as the executor of the last will and testament of R. J. Thornton, deceased, against Annie L. Thornton, Reuben J. Thornton, Minter L. Thornton, and Loxla C. Thornton, who are the widow and children of R. Loxla Thornton, deceased, and against certain other parties named as respondents to the bill, for the purpose of quieting the title to certain real estate situated in the city of Birmingham. As an incident to the relief sought,

it is prayed in the bill that a certain conveyance which was executed and delivered by said R. Loxla Thornton and wife to said R. J. Thornton be reformed. This deed conveys, on its face, the east half of lot 14, block 103, on First avenue, but the bill alleges that the land actually intended to be conveyed was the east half of lot 15, in said block, and that the words "lot 15" were, by a clerical misprision, left out of the deed, and the words "lot 14" were, by such misprision, written in the deed in their stead. The bill alleges, with sufficient certainty, that the land intended to be conveyed by said deed—and understood by the parties to be conveyed by the deed—was the east half of lot 15, and shows that, upon the delivery of the deed, the grantor placed the grantee in possession of the east half of said lot 15, and that the grantee accepted the possession of said east half of lot 15 as the land conveyed.

1. The real controversy in this case is not, however, over that aspect of the bill, which seeks the reformation to which we have above referred. The controversy grows out of the fact that it is claimed that R. Loxla Thornton, at the time of his death, owned and was in possession of the east half of lot 14 and all of lot 15, in said block. The complainant, on the other land, claims that R. Loxla Thornton was *not* the owner, and was not in possession, of any parts of lots 14 and 15 at the time of his death, but that at that time the lands were in possession of and were owned by said R. J. Thornton, deceased. R. Loxla Thornton, deceased, was a son of the said R. J. Thornton, deceased. The said R. Loxla Thornton was a lawyer, who resided in Birmingham, and for at least a part of the time looked after the lands of his father in Jefferson county. The father, R. J. Thornton, did not reside in Jefferson county, and was only occasionally there. On April 10, 1889, said R. J.

Thornton, the father, by warranty deed conveyed to R. Loxla Thornton, the son, the above-mentioned lots 14 and 15. On October 7, 1896, the said R. Loxla Thornton and wife, Annie L. Thornton, conveyed to D. T. Hudmon lands which are described in the deed as follows: "Beginning at a point on the north side of First avenue one hundred (100) feet west of the northwest corner of said First avenue and Twenty-Third street; thence north parallel with said Twenty-Third street one hundred and forty (140) feet to an alley; thence east along the south side of said alley seventy-five feet; thence south parallel with said Twenty-Third street one hundred and forty feet to the north side of said First avenue and thence west along the north side of said First avenue seventy-five feet to the point of beginning." The above description is an accurate description of said lot 14 and the west half of said lot 15. The above deed was recorded, and in recording it the words "seventy-five," where they first appear in the deed, were written "twenty-five," but where they appear the second time in the deed they were written in the record "seventy-five," just as they appear in the said deed. It is contended by appellant that on account of this clerical error, which was committed by the clerk who *recorded* the deed, the *record* of the deed made it appear that only the western 25 feet off of said lots 14 and 15—which is the west half of lot 14, as each lot contains a width of 50 feet and a depth of 140 feet—was conveyed by the deed, instead of the western 75 feet, which, as we have already said, includes all of lot 14 and the west half of lot 15. On December 10, 1897, D. T. Hudmon and wife conveyed said lot 14 and the west half of lot 15 to said R. J. Thornton, by a deed which described the land just as it was described in the said deed from R. Loxla Thornton to D. T. Hudmon. This deed from D. T. Hudmon and

wife to R. J. Thornton was not recorded until after the death of both R. J. Thornton and R. Loxla Thornton, and not until *after* Annie L. Thornton, the widow, and Minter L. Thornton, a son of R. Loxla Thornton, deceased, had executed and delivered the *mortgage* to which we hereafter refer. On January 9, 1908, said R. Loxla Thornton, the son, together with his wife, Annie L. Thornton, made a deed to said R. J. Thornton, the father, to 25 feet of land on First avenue, the land being described in the deed as east half of lot 14. *This* is the deed which is sought to be reformed so that the description therein may be made to read *east of lot 15,* instead of east half of lot 14, to which reference has already been made. The said R. J. Thornton died in *February, 1910,* and the said R. Loxla Thornton died in *July, 1909,* about six months before the death of his father.

2. R. Loxla Thornton was not in good physical health for some time before his death, and the same is true with reference to said R. J. Thornton. It is also evident that said R. Loxla Thornton was not a good business man, and we gather from a letter which was written by him to his father on February 9, 1909, that he was aware that his father had come to that conclusion. In fact we gather from that letter that up to that time the said R. Loxla Thornton had been advising with said R. J. Thornton about his property in Jefferson county, but that, from that time forward, while the father and son continued to regard each other with affection, the said R. Loxla Thornton took no further interest in his father's business affairs. R. J. Thornton was evidently a man who had been successful in business, and who, for several years prior to his death, having retired from business pursuits, spent his time in the pursuit of physical health. James A. Going & Co. were his real es-

tate agents in the city of Birmingham, and for a number of years prior to the death of the said R. J. Thornton had, as his agents, possession of the lands in controversy. They assessed the lands in the name of "R. J. Thornton, Agent." Why the word "Agent" was added the evidence fails to disclose. *That* circumstance, under the facts of this case, throws no light on the controversy, and we disregard any consideration of it. If R. J. Thornton was, in his ownership of the property, or in his possession of it, the agent of any one, the evidence fails to show it.—*J. W. Baxter, Trustee v. Ft. Payne Co., Infra,* 62 South. 42.

It is not claimed that R. J. Thornton had any real estate on First avenue in the city of Birmingham, except the 100 feet in controversy. The title to the western 75 feet of that 100 feet passed out of R. Loxla Thornton into D. T. Hudmon by the deed dated October 7, 1896, and while an error was committed by the clerk in the probate office in transcribing into the record the description of the land conveyed by the deed, *this* clerical error in the record can be of no service to any one.

Section 3369 of the present Code—which was section 1270 of the Code of 1852, and which section has, unchanged, been brought forward into all of our subsequent Codes—provides that a conveyance shall be *operative as a record* from the date of its delivery to the probate judge for record. "This statute relieves a party who has done all that is devolved upon him by the law, from the consequences of the failure of the probate judge to discharge his duty, or of the imperfect manner in which he discharges it. The conveyance being operative as a record from its delivery to the judge, no subsequent mistake of his could deprive it of the operation thus given it by law."—*Mims v. Mims,* 35 Ala. 23;

*Chapman & Co. v. Johnson,* 142 Ala. 633, 38 South. 797, 4 Ann. Cas. 559.

The title of this particular 75 feet of the 100 feet passed *out* of D. T. Hudmon *into* R. J. Thornton by a deed dated December 10, 1897, and while *that* deed was not recorded until some time after the death of R. J. Thornton, *that* fact cannot avail appellant. No party to this cause claims that he has any right to the property by virtue of any conveyance which was made by D. T. Hudmon after Hudmon had sold the land to R. J. Thornton or that R. J. Thornton's failure to record the Hudmon deed did, in any way, affect or give rise to the claims now made by any person to the property.

3. In a letter dated January 25, 1909—only six months before his death—said R. Loxla Thornton wrote his father as follows: "I have a proposition from Mr. Jim Dryer, an old Tuskegee boy, whom you know, who says that he has a client that will, at your option, either yourself or said client, erect a building of two stories on your First avenue property (50 feet of it); valuing your property at $300.00 a foot and the building at from $12,000.00 to $15,000.00, this would give you, at 6 per cent. which he is willing to pay, a revenue of $1,800.00. Mr. Dryer says that his client will pay all the taxes and insurance on the building, and this will give you net 6 per cent. upon $30,000.00. Of course you must pay Mr. Dryer a commission in the matter of the negotiation that is proposed by his client. As I wrote you, there is a movement on the part of the owners of the property in the vicinity of yours on First avenue to improve the same, I would advise that you accept a proposition of this character, because of the fact that it would add to the value of the remaining 50 feet, but I would advise that the walls be so constructed that they will stand an additional story, the party

proposes to take the property for five years." In the
above letter R. Loxla Thornton shows *conclusively* that
he knew that R. J. Thornton owned the 100 feet of land
in controversy; in that letter he recognized his father's
title to and possession of the 100 feet, and we find, in
subsequent letters written by him to his father the same
recognition of his father's title, and necessarily a dec-
laration that he (R. Loxla Thornton) did *not* own and
was *not* in possession of said land. While after the
death of R. Loxla Thornton his widow set up the claim
that her husband, R. Loxla Thornton, owned and was
possessed of the east half of lot 14 and all of lot 15,
and made mortgages upon it, the above letter of the hus-
band shows that this claim was not well founded, and
we think that the great weight of the evidence shows
that R. J. Thornton had not only been in the actual
possession of all of lots 14 and 15, under claim of own-
ership, for several years before the death of R. Loxla
Thornton, but that he was in such possession when R.
Loxla Thornton died. This same evidence shows that
R. J. Thornton, and after his death those claiming
through him under his will, were in such possession
of the property when the widow of R. Loxla Thornton
made mortgages upon it. R. Loxla Thornton seems to
have spent not only all of his own, but all of his wife's
property by the time he died, and while his widow prob-
ably made the above claim and the above mortgages in
good faith, the evidence discloses that her opinion that
her husband owned the property when he died was not
well founded. While the deed from R. Loxla Thornton
dated January 9, 1908, erroneously described the lands
conveyed therein as the east half of lot 14 instead of
the east half of lot 15, no party to this cause can legal-
ly complain on that account. The only parties now com-
plaining of the decree of the chancellor in ordering a

reformation of that deed are parties who claim through a mortgage made by the widow of R. Loxla Thornton and one of his children on their interest in that land after the death of R. Loxla Thornton. Actual possession of land operates as notice of the title, whether the title be legal or equitable of the party in possession.— *Griffin v. Hall*, 111 Ala. 601, 20 South. 485; *Burt v. Cassety*, 12 Ala. 734; 4 Mayf. Dig. p. 685, sec. 92.

The decree of the chancellor was in accordance with the views above expressed, and it is therefore affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.